IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JEROME ANTWAN COOPER, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 2:20-cv-02783-TLP-tmp |
| v. ) | |
| ) | |
| WARDEN FCI BENNETTSVILLE and ) | |
| ANGELA OWENS, Warden FCI-Memphis, ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING REQUEST FOR ADJUDICATION ON THE MERITS, GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, DENYING PETITION UNDER 28 U.S.C. § 2241, CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Jerome Antwan Cooper[1] petitions pro se for a writ of habeas corpus under 28 U.S.C. § 2241.  (ECF No. 1)  Respondent now moves for summary judgment.  (ECF No. 30.)  Petitioner responded in opposition.  (ECF No. 45.)[2]  And Respondent replied.  (ECF No. 46.)  Petitioner then amended his response.  (ECF No. 57.)[3]  And Respondent adopted the Previously Filed Motion for Summary Judgment and Supplementation of Authority.  (ECF No. 61.)  Petitioner has requested Adjudication on the Merits.[4]  (ECF No. 62.)

---

[1] The Bureau of Prisons ("BOP") has custody of Petitioner and is housing him at the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis").  The BOP has assigned him register number 19120-021.
[2] The response was entitled "Response to Motion to Dismiss."  (*See* ECF No. 45 at PageID 198.)
[3] This document was entitled "Amendment in relation back pursuant to Rule 15(c)."  (*See* ECF No. 57 at PageID 16.)
[4] This Court granted Petitioner an extension of time to respond to Respondent's Adoption of Previously Filed Motion for Summary Judgment and Supplementation of Authority.  (*See* ECF No. 65.)  However, Petitioner has not responded, and the period for doing so has expired.

For the reasons stated below, the Court **GRANTS** Petitioner's Request for Adjudication on the Merits, as the § 2241 Petition is ripe for review, **GRANTS** Respondent's Motion for Summary Judgment, and **DENIES** the § 2241 Petition.

## BACKGROUND ON STATE AND FEDERAL SENTENCES

This case is about the movement of Petitioner from state to federal custody and back again. And so the dates here are important. On March 10, 2014, Georgia authorities arrested Petitioner for theft by shoplifting, possession of a firearm or knife in committing a crime, possession of a firearm by a felon, carrying a concealed weapon, theft by taking, and forgery in Case No. CR141109 and on a probation violation in Case No. CR093085. (ECF No. 30-2 at PageID 107, 110.) On April 20, 2015, Petitioner's probation officers petitioned for probation revocation. (*Id.* at PageID 124.)

In September 2014, a federal grand jury in the United States District Court for the Southern District of Georgia, Savannah Division, indicted Petitioner for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (*Id.* at PageID 107, 127–28.) And on September 23, 2014, the court there issued a writ of habeas corpus ad prosequendum. As a result, the United States Marshal Service took custody of him from the primary jurisdiction of Georgia under that writ on October 8, 2014. (*See id.* at PageID 107, 130–31.)

Petitioner was found guilty of the charge. So on April 7, 2015, the federal district court sentenced Petitioner to 120 months imprisonment, followed by three years of supervised release. (*Id.* at PageID 107, 133–35.) The Court recommended "that the defendant be credited for all of the time he served from March 10, 2014." (*Id.*) The Court then remanded Petitioner to the U.S. Marshal's custody with a designation to the federal correctional facility in Jesup, Georgia. (*Id.* at PageID 134.) That said the Marshals returned Petitioner to state custody in Chatham County,

Georgia on the same day. (*Id.* at PageID 107, 130.)[5]

On May 7, 2015, the State dismissed all of Petitioner's charges, except his parole violation. (*Id.* at PageID 107, 110–11.) On June 5, 2015, the state court then sentenced Petitioner to a two-year term of confinement for his parole violation in Case No. CR093085, with prior custody credit from March 10, 2014, the date of his arrest on the state court charges. (*Id.* at PageID 107, 114, 143–44.) On December 16, 2015, the state court paroled Petitioner and released him back to federal custody. (*Id.* at PageID 107, 140–44.) And Petitioner's federal sentence started on December 16, 2015. (*Id.* at PageID 156.)

## THE ADMINISTRATIVE PROCESS

On March 9, 2019, Petitioner filed for an administrative remedy at the institutional level (Remedy ID No. 971354-F1) seeking jail credit. (ECF No. 30-2 at PageID 106, 161.) The prison denied that remedy on March 29, 2019. (*Id.*)

On April 19, 2019, Petitioner appealed to the regional level (Remedy ID No. 971354-R1). (*Id.* at 106–07.) On June 10, 2019, the Regional Office rejected the remedy for failing to submit the proper number of continuation pages within his appeal and instructed Petitioner to resubmit the appeal in proper form within 10 days. (*Id.* at PageID 107, 161.) Petitioner did not resubmit the appeal or appeal to the Central Office. (*Id.* at PageID 107.)

Petitioner requested credit for time served in state custody, and the BOP began a review of his sentence. (*Id.*) On June 6, 2019, the BOP sent a letter to the sentencing judge stating that

---

[5] Petitioner appealed his federal conviction, and the Eleventh Circuit affirmed the conviction and sentence. *See United States v. Cooper*, 689 F. App'x 901 (11th Cir. 2017). He moved for habeas relief under 28 U.S.C. § 2255, which the Court denied. *See Cooper v. United States*, No. CR414-345, 2018 WL 3233343 (S.D. Ga. July 2, 2018). The Eleventh Circuit denied a certificate of appealability. *Cooper v. United States*, No. 18-12962-K, 2018 WL 7046610 (11th Cir. Oct. 22, 2018).

3

Petitioner had requested that his federal sentence be served concurrently with the state term. (*Id.*) This would be accomplished by the BOP designating the state institution for service of his federal sentence under 18 U.S.C. § 3621(b). (*Id.*) Such action would thereby reduce the total amount of time spent in custody.

In *Setser v. United States*, 566 U.S. 231, 237 (2012), the United States Supreme Court held that the authority to order a federal sentence concurrent with or consecutive to any other sentence rests with the federal sentencing court. With that in mind, the BOP requested guidance from the sentencing Court as to how Petitioner's federal sentence should run as to the state sentence. (ECF No. 30-2 at PageID 107, 146.)

The Court responded on June 28, 2019, stating that "the conduct underlying the state convictions was unrelated to the instant federal conviction. Accordingly, Judge Moore does not recommend that Cooper be awarded credit toward his federal sentence for the time that Cooper spent in custody that was credited toward this state sentence." (*Id.* at PageID 107, 150.)

The BOP then denied Petitioner's request for a retroactive designation (i.e., a *nunc pro tunc* designation) that his federal sentence run concurrent with his later-imposed state sentence. (*Id.* at PageID 107, 153.)

## The § 2241 HABEAS PETITION - CIVIL CASE NO. 20-2783

In April 2020, Petitioner, then an inmate housed at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI Bennettsville"), filed his § 2241 Petition in the United States District Court for the District of South Carolina. (ECF No. 1.) Plaintiff asserted the following grounds for relief:

> 1. The BOP erred in not awarding Petitioner credit for the time spent in presentence custody due to *Willis*;[6] and

---

[6] *See Willis v. United States*, 438 F.2d 923 (5th Cir. 1971) (per curiam).

4

      2. The BOP violated *Mangum*[7] when it denied Petitioner's request for *nunc pro tunc* after soliciting the sentencing court's position on the concurrency of the later imposed sentence (of state authority).

(ECF No. 1-3 at PageID 14.)

Respondent, then the Warden at FCI Bennettsville, moved for summary judgment. (ECF No. 30.) Petitioner responded to that motion, (ECF No. 45), and Respondent replied. (ECF No. 46.) The South Carolina District Court then transferred this case to this Court, because the BOP transferred Petitioner to FCI Memphis. (ECF No. 47.)

On December 9, 2020, this Court directed the Clerk to modify the docket and serve Warden Angela Owens, at FCI Memphis. (ECF No. 53.) The Court then ordered the Warden to respond to the § 2241 Petition and allowed her the opportunity to "adopt or supplement the motion for summary judgment or otherwise provide an appropriate response to the § 2241 Petition." (*Id.* at PageID 7.) On January 14, 2021, Petitioner amended his response to the summary judgment motion addressing the issue of exhaustion of administrative remedies. (*See* ECF No. 57.) On January 25, 2021, Warden Owens requested an extension of time to respond to that, and the Court gave her until February 22, 2021. (*See* ECF Nos. 58 & 59.) On January 29, 2021, the Warden adopted the Previously Filed Motion for Summary Judgment and Supplementation of Authority. (ECF No. 61.) That same day, Petitioner requested Adjudication on the Merits. (ECF No. 62.)

In Petitioner's Request for Adjudication on the Merits, he claims incorrectly that, as of January 25, 2021, the Warden had not served a response or adopted or supplemented the Motion for Summary Judgment. (ECF No. 62 at PageID 30.) Petitioner requests that the Court address

---

[7] *See Mangum v. Hallembaek*, 824 F.3d 98 (4th Cir. 2016).

5

the merits of the § 2241 Petition without consideration of the Warden's response, because the Warden had failed to respond.  (*Id.* at PageID 30–31.)

But Petitioner is wrong.  Warden Owens did file an extension, which this Court granted.  (ECF No. 58.)  And she later adopted the motion for summary judgment with a minor correction and supplemented the relevant authority.  (ECF No. 61.)  The Court, therefore, **GRANTS** Petitioner's request for adjudication on the merits.  It does so, however, considering the Warden's filings and will begin to address the merits below.

## ANALYSIS OF §2241 PETITION

As noted above, both the state court which sentenced Petitioner on his parole violation and the federal sentencing court recommended that Petitioner be given credit for his time in custody since his arrest on March 10, 2014.  The Warden argues that Petitioner has not exhausted his administrative remedies and is not entitled to double credit for the time he served on a separate state conviction.  (ECF No. 30-1 at PageID 91, 95–102.)  Further, the Warden contends that a *nunc pro tunc* designation would be inappropriate.  (*Id.* at PageID 91, 102–105.)

To be sure, federal courts are authorized to issue writs of habeas corpus when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A § 2241 petition is appropriate where, as here, an inmate challenges the execution of his federal sentence.  *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) ("Because defendant Jalili is challenging the manner in which the sentence was being executed, rather than the validity of the sentence itself, Section 2255 does not apply.").  A court may address a § 2241 petition claiming the BOP failed to award sentence credit after the inmate has exhausted his administrative remedies with the BOP.  *See United States v. Westmoreland*, 974 F.2d 736, 737–38 (6th Cir. 1992).  In the instant case, the parties dispute whether Petitioner

exhausted his administrative remedies and is ready to proceed in federal court.

**I.      Exhaustion of Administrative Remedies**

For starters, exhaustion of administrative remedies within the BOP is a jurisdictional prerequisite to seeking court review of the BOP's sentence credit calculation. *Westmoreland*, 974 F.2d at 737–38; *see also Davis v. Keohane*, 835 F.2d 1147, 1149 (6th Cir. 1987) (requiring exhaustion of administrative remedies within BOP before pursuing habeas relief); *Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir. 1981) (same); *see United States v. Singh*, 52 F. App'x 711, 712 (6th Cir. 2002) ("Complete exhaustion of administrative remedies is a prerequisite to seeking review of the BOP's calculation of sentencing credit.").

The BOP has a three-tiered Administrative Remedy Program where an inmate may progressively post grievances at the institutional, Regional, and Central Office (national) levels. *See generally* 28 C.F.R. § 542.10, *et seq*. After the inmate has attempted to resolve his respective matter of concern informally, he has to send the request to the Warden at the institution level. *See* 28 C.F.R. § 542.13–.14. If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director within 20 days of receiving the Warden's response. *See* 28 C.F.R. § 542.15(a). If he is dissatisfied with the Regional Director's response, he may appeal to the General Counsel in the BOP's Central Office, Washington, D.C., within 30 days of receiving the Regional Director's response. *Id.*

In this case, Petitioner filed for an administrative remedy at the institutional and regional levels. But when the BOP rejected his regional appeal, Petitioner did not go further. (*See* ECF No. 30-1 at PageID 95–97.) Petitioner contends that he was "blocked from pursuing [his] administrative remedies any further" because the BOP withheld a rejection notice for his regional appeal. (ECF No. 45 at PageID 200, 202.) Petitioner asserts that he filed his appeal to

the regional level on April 19, 2019.  (ECF No. 45-2 at PageID 219.)  And between the dates of June 20, 2019 and June 27, 2019, he began to inquire about the status of the regional administrative remedy.  (*Id.*)

On June 27, 2019, Petitioner claims that his unit team provided him an administrative remedy generalized retrieval printout.  (*Id.*)  That was when Petitioner discovered that the Regional Office rejected his regional remedy on June 10, 2019.  (*Id.*)  Petitioner states that, from June 27, 2019 to July 19, 2019, he continued to seek the rejection notice because: (1) he did not know why the appeal was rejected; and (2) he did not have a copy of the appeal.  (*Id.* at PageID 220.)  Petitioner argues that, to resubmit any correspondence, the rejection must be attached, or the BOP will not accept it.  (*Id.*)

Petitioner claims that, on July 19, 2019, he moved the South Carolina District Court for emergency relief, asking it to compel the BOP to give him the responses to several requests for administrative remedies which the BOP either rejected or closed.  (ECF No. 45 at PageID 201–202; *see* ECF No. 45-2 at PageID 220–221.)  Petitioner claims the Court there informed him that, in the Fourth Circuit, a federal inmate does not have a constitutional right to participate in the BOP grievance process and that such an argument "cannot form the basis for a *Bivens* action and would be subject to summary dismissal." (*Id.* at PageID 201; *see Cooper v. Mackelburg, et al.*, Case No. 4:19-cv-02020-JFA, ECF No. 10, p.1 (D.S.C. Aug. 14, 2019).)

Relying on *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008), Petitioner argues that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." (ECF No. 45 at PageID 202.)  He asserts that, when prison officials prevent inmates from using the administrative process, the process exists on paper, but not in reality, and "the district court is obligated to ensure that deficits in

8

exhaustion are not from the action or inaction of prison officials." (*Id.* at PageID 203.) Petitioner argues that he was blocked from exhausting the administrative process. (*Id.*)

The Warden answers that *Moore* explains that "a prisoner has exhausted his available remedies, even if prison employees do not respond." (*See* ECF No. 46 at PageID 225.) The Warden argues therefore that Petitioner could have exhausted his remedies by filing with the Regional Office before the response time elapsed even without the rejection. (*Id.*) Overall, the Warden contends that the Court should dismiss this petition without reaching the merits. (*Id.* at PageID 226.)

In reply, Petitioner argues that BOP Program Statement 1330.18 requires a copy of the rejection notice with future correspondence, and he would have been charged with not exhausting his remedies, because he did not have a rejection notice to submit. (ECF No. 57 at PageID 17.) Petitioner asserts that he was diligent in pursuing his administrative remedies. (*Id.* at PageID 18.)

And although Plaintiff appears to be arguing that it would have been futile to further pursue an administrative remedy, he made no actual attempt to exhaust beyond the initial regional appeal. And BOP regulations say that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *See* 28 C.F.R. § 542.18. The failure to respond generally allows the prisoner to move to the next level for exhaustion of his administrative remedies.

For example, in *Risher v. Lappin*, 639 F.3d 236, 239–41 (6th Cir. 2011), the Sixth Circuit addressed the issue of whether a prisoner's efforts to exhaust administrative remedies were sufficient when the prisoner did not receive a response at the regional level and then pursued a remedy with the Central Office, only to be rejected for failure to include copies of his appeal to

9

the Regional Director. The Sixth Circuit determined that Risher's efforts were sufficient, because he followed the regulations by pursuing a timely remedy to the Central Office when he received no response at the regional level. *Id.* at 240.

"An inmate must follow the grievance procedure to its conclusion . . . prior to filing a civil suit." *Belser v. Woods*, No. 17-2411, 2018 WL 6167330, at *2 (6th Cir. July 6, 2018). But unlike Risher, Petitioner failed to pursue an administrate remedy at the Central Office level after he did not receive a timely regional response. *See Mora v. Rios*, No. 7:11-0068-KKC, 2012 WL 381720, at *3 (E.D. Ky. Feb. 6, 2012) (explaining that Petitioner should have appealed at the Regional level after the Warden failed to respond to Petitioner's institutional remedy request within the time allowed and holding that Petitioner failed to properly exhaust). Had Petitioner timely appealed to the Central Office, he would have exhausted his administrative remedies for his § 2241 Petition, whether or not the BOP rejected the filing. But he did not. For that reason, the Court finds that Petitioner has failed to exhaust his administrative remedies.

**II.     *Nunc Pro Tunc* Designation**

Now the Court will address Petitioner's argument that the BOP should have given him a *nunc pro tunc* designation. First off, Title 18 U.S.C. § 3621(b) authorizes the Bureau to designate the place of imprisonment for inmates who were convicted after November 1, 1987. It states:

> (b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . . The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;

  (3) the history and characteristics of the prisoner;
  (4) any statement by the court that imposed the sentence—
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*See* 18 U.S.C. § 3621(b).

  A *nunc pro tunc* designation allows the BOP to retroactively designate a state facility for concurrent service of a federal sentence. And while the BOP has to consider a request for a *nunc pro tunc* designation, it "has no obligation to grant it." *Ruff v. Butler*, No. 16-5565, 2017 WL 5135545, at *2 (6th Cir. June 16, 2017) (quoting *Jones v. Winn*, 13 F. App'x 419, 421 (7th Cir. 2001)). What is more, habeas relief for denial of a *nunc pro tunc* designation is available only where there is a fundamental error, which carries serious potential for a miscarriage of justice. *Ruff*, 2017 WL 5135545, at *2.

  The Warden contends here that such a designation is inappropriate. (ECF No. 30-1 at PageID 102–05; *see* ECF No. 61 at PageID 28.) The Warden notes that the sentencing court has the authority to determine if a sentence should run consecutive or concurrent. (*Id.*; *see also* ECF No. 30-2 at PageID 146–47, 150.) And so, the Warden made an inquiry to the sentencing judge who determined that the federal sentence should run consecutive to the state parole revocation sentence. (*Id.*) The sentencing judge reasoned that the state conviction for a parole violation was unrelated to the federal conviction. (*Id.*)

  As the Warden points out, the Sixth Circuit has recognized that "'when a person subject to a federal sentence is serving a state sentence, the [BOP] may designate the state prison as the place of imprisonment for the federal sentence—effectively making the two sentences concurrent—or decline to do so—effectively making them consecutive.'" *Wahid v. Williams*,

No. 19-3851, 2020 WL 5412791, at *1 (6th Cir. Aug. 13, 2020) (quoting *Setser*, 566 U.S. at 235); (*See* ECF No. 61 at PageID 28.)  And the BOP can make a *nunc pro tunc* designation while the inmate is in state custody or once the inmate enters federal custody.  *Wahid*, 2020 WL 5412791 at *1 (citing *Setser*, 566 U.S. at 235 n.1).  The BOP, however, is not required to grant a request for *nunc pro tunc* designation.  *Cunningham v. Wilson*, Civ. No. 10-234-GFVT, 2011 WL 2472550, at *5 (E.D. Ky. June 22, 2011) (citing *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990)).

The BOP here denied the request for a *nunc pro tunc* designation because the sentencing court's determination that the state sentence was unrelated to the federal sentence and that the sentences should be consecutive to each other.  (ECF No. 30-2 at PageID 153.)  But Petitioner argues that the federal sentencing court's view on the *nunc pro tunc* request is irrelevant.  (*See* ECF No. 1 at PageID 3–4.)  Petitioner contends that the federal court could not determine whether the federal sentence should run concurrent or consecutive to a state sentence that had not yet been imposed.  (*Id.*)  What is more, Petitioner asserts that the federal court failed to consider the state court's view that the state sentence should be concurrent to the federal sentence.  (*Id.*)

Petitioner argues that the BOP erred in denying his *nunc pro tunc* designation based on the Fourth Circuit case *Mangum v. Hallembaek*, 824 F.3d 98 (4th Cir. 2016) ("*Mangum I*").  In *Mangum I*, the prisoner sought a *nunc pro tunc* designation to a state facility for service of his federal sentence.  *Id.* at 99.  The "designation would have had the effect of crediting against Mangum's *previously imposed* federal sentence the time he spent in state prison on a *subsequently imposed* state sentence."  *Id.*  And this was the desired result of the state sentencing judge.  *Id.*

But after the federal sentencing judge was silent on whether the sentence should be

12

concurrent or consecutive to the later imposed state sentence, the BOP imposed the federal sentence consecutively "notwithstanding the clearly expressed intent of the state sentencing court that its sentence be served concurrently with the federal sentence." *Id.* at 101. In the end, the *Mangum I* Court determined that the BOP abused its discretion. *Id.* at 102.

The *Mangum I* Court explained that when the federal sentencing judge was silent as to the Court's intention, the BOP mistakenly presumed that the federal sentence should run consecutively to the later imposed state sentence. *Id.* And the BOP based that presumption on its reading of 18 U.S.C. § 3584(a), which states that, "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *Id.* The BOP's mistake was even more profound because at the time of Mangum's sentencing, a federal district judge was *powerless*, under *United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006), to impose a federal sentence to be served consecutive to a later imposed state sentence. *See id.*

With that in mind, the Warden argues that *Mangum I* no longer applies because the Supreme Court's decision in *Setser*, 566 U.S. 231, overturned the binding precedent in *Smith*, 472 F.3d at 225,[8] on which *Mangum I* relied. (ECF No. 30-1 at PageID 104.) *Setser* resolved a circuit split by holding that, under 18 U.S.C. § 3584(a), a district court has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed and makes a federal court's views on concurrent and consecutive sentences highly relevant to *nunc pro tunc* requests. *Mangum*, 824 F.3d at 102; *see also Mangum v. Hallembaek*, 910 F.3d 770, 778 n.6 (4th Cir. 2018). On a later appeal, the Fourth Circuit noted that the mandate in

---

[8] *See United States v. Mavroudis*, 587 F. App'x 46, 48–49 (4th Cir. 2014) ("*Setser* implicitly overruled *Smith*.").

*Mangum I* was "limited to the law as it stood at the time of Mangum's federal sentencing." *Mangum*, 910 F.3d at 778 n.6. That, however, is not the law today.

The BOP here properly consulted the federal sentencing judge who determined that the federal sentence should run consecutive to Petitioner's unrelated state sentence. *See* 18 U.S.C. § 3621(b)(4). Consistent with the sentencing court's determination, the BOP then denied the request for a *nunc pro tunc* designation of the state facility as Petitioner's place of imprisonment for serving his federal sentence. *See Dotson v. Kizziah*, 966 F.3d 443, 446 (6th Cir. 2020) ("[T]he BOP properly consulted the federal sentencing judge and considered the other pertinent factors including the seriousness of the offenses and [Petitioner's] criminal history.").

In the end, Petitioner has not demonstrated a fundamental error over the denial of the *nunc pro tunc* designation.

### III. Sentence Computation

Finally, the Court will address the calculation of Petitioner's federal sentence. Title 18 U.S.C. § 3585 governs the calculation of a federal prisoner's sentence, including its commencement date and any credit for custody before sentencing. That Section states:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody. —A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

*Id.*

The Court cannot compute sentence credits under 18 U.S.C. § 3585(b). Instead, that task is reserved for the Attorney General. *United States v. Wilson*, 503 U.S. 329, 334 (1992); *Westmoreland*, 974 F.2d at 737–38 (district court cannot consider habeas petition asserting right to sentence credits under 18 U.S.C. § 3585(b) until Attorney General has computed credit and petitioner has exhausted administrative remedies). So "[a]lthough it was the court that imposed the sentence, it is the BOP's job to determine how the sentence is executed—*i.e.*, when the sentence commenced and whether [Petitioner] is entitled to any prior custody credits." *Rambo v. Hogsten*, No. CIV.A. 10-116-ART, 2010 WL 4791970, at *3 (E.D. Ky. Nov. 17, 2010).

Only the BOP has the authority to determine when a federal sentence starts. *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007); *Doan v. LaManna*, 27 F. App'x 297, 299 (6th Cir. 2001). And it is only the BOP that awards sentence credit. *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993); *see Reno v. Koray*, 515 U.S. 50, 60 (1995) (stating that the BOP is "the agency charged with administering the credit statute").

The Court may address the BOP's decisions in ruling on a § 2241 petition. *United States v. Profitt*, No. 3:06-CR-136-1, 2014 WL 408299, at *4 (S.D. Ohio Feb. 3, 2014) ("A petition brought under 28 U.S.C. § 2241 is the proper vehicle for challenging the BOP's administration of a sentence after exhausting administrative remedies."); *Rambo*, 2010 WL 4791970, at *2 ("Because [Petitioner] is challenging the manner in which the BOP is executing his sentence, rather than the validity of the sentence itself, his § 2241 habeas petition is the appropriate vehicle."). What is more, the district court defers to the BOP's Policy Statements and its calculation of Petitioner's sentence. *Rambo*, 2010 WL 4791970, at *7. The Supreme Court has determined that the BOP's internal agency guidelines are entitled to "some deference" where

15

they are based on a "permissible construction of the statute." *Id.* (internal quotation marks omitted).

And the doctrine of "primary jurisdiction" comes into play when someone faces criminal charges in two or more jurisdictions like Petitioner here. The Supreme Court explained primary jurisdiction in *Ponzi v. Fessenden*, 258 U.S. 254, 260–262 (1922).

> In *Ponzi v. Fessenden*, 258 U.S. 254, 260–262 (1922), the Supreme Court first recognized the doctrine . . . to provide an orderly method of prosecuting an individual who has violated the law of more than one sovereign. Pursuant to this doctrine, the sovereign that first arrests an individual has primary control or custody over him; its claim over him has priority over all other sovereigns that subsequently arrest him; it is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign; and it retains this priority, unless and until it has relinquished its jurisdiction to some other sovereign.
>
> Additionally, this primary jurisdiction continues until the first sovereign has relinquished it in some way. Typically, a sovereign may only relinquish primary jurisdiction in four ways: release on bail, dismissal of the charges, release on parole, or expiration of the sentence. Moreover . . . , federal courts have uniformly held that the sovereign that first arrests a prisoner maintains primary custody, even when the prisoner is taken to federal court under a writ of *habeas corpus ad prosequendum*; in such instances, the prisoner is merely "on loan" to the federal sovereign.

*Williams v. Wilson*, No. 6:10-CV-275-GFVT, 2011 WL 2560274, at *2 (E.D. Ky. June 28, 2011) (citations omitted). And so the temporary transfer into federal custody under a writ of habeas corpus *ad prosequendum* does not cause the primary jurisdiction to relinquish primary custody. *See Easley v. Stepp*, 5 F. App'x 541, 543 (7th Cir. 2001).

For that reason, "[w]hen a State sends a prisoner to federal authorities [under a writ of habeas corpus ad prosequendum], 'the prisoner is merely "on loan" to the federal authorities,' with the State retaining primary jurisdiction over the prisoner." *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) (quoting *United States v. Casas*, 425 F.3d 23, 67 (1st Cir. 2005)). "As a consequence, '[a] federal sentence does not begin to run . . . when a prisoner in state custody is

16

produced for prosecution in federal court [under] a federal writ of habeas corpus *ad prosequendum*.'" *Id.*

Here, the State of Georgia had primary custody of Petitioner when the federal grand jury returned its indictment against Petitioner. And as a result, he was "on loan" or borrowed from state custody under a writ of habeas corpus *ad prosequendum* to answer the federal charges from October 8, 2014, to April 7, 2015. (ECF No. 30-1 at PageID 99; ECF No. 30-2 at PageID 130–31.) The temporary transfer of custody to federal authorities did not transfer primary jurisdiction to the BOP. The BOP returned Petitioner to state custody, and he remained in state custody until the State released him to the United States Marshal on December 16, 2015, at which time the State relinquished primary jurisdiction. (*See id.*)

By the terms of the statute, the running of a federal sentence cannot begin before the date the court imposes that sentence. *See Doan*, 27 F. App'x at 299; *Williams*, 2011 WL 2560274, at *4 ("Logically, a federal sentence cannot begin to run any earlier than the date on which it was imposed."). The date the BOP selected for the start of Petitioner's sentence was December 16, 2015—the date the federal authorities "received [him] in custody" from the State of Georgia. (ECF No. 30-1 at PageID 93, 98–99.)

Petitioner requests prior custody credit for the period from March 10, 2014, the date of his Georgia arrest, until mid-June 2015, when the state court imposed his parole revocation sentence. (ECF No. 1 at PageID 3.) He asserts that, consistent with *Willis*, his federal sentence runs concurrent with any state sentence, and his federal full-term release date, December 15, 2025, is greater than that of his state sentence, which was March 10, 2016. (*Id.*)

The Warden counters that the State credited Petitioner's time toward his parole revocation sentence. (ECF No. 30-1 at PageID 99–100; *see* ECF No. 30-2 at PageID 107.) The

17

Warden asserts that, under 18 U.S.C. § 3585, a defendant could not receive double credit for detention time. (ECF No. 30-1 at PageID 100.) What is more, the Warden argues that *Willis* is not persuasive because: (1) it was based on the predecessor statute to § 3585; and (2) the facts of *Willis* are not comparable, because Petitioner has not shown that he was denied bail in state court because of a federal detainer. (*Id.* at PageID 101–102.) And the Warden contends that the BOP's Sentence Computation Manual, despite acknowledging *Willis*, bars credit. (ECF No. 30-1 at PageID 102.) The Manual states, "if the release from the non-federal sentence occurs prior to the commencement of the federal sentence, then any nonfederal presentence time awarded on the state sentence shall not be applied to the federal sentence." (*Id.*)

By enacting § 3585(b), "[c]ongress has made clear that a defendant could not receive double credit for his detention time." *Wilson*, 503 U.S. at 337. Federal courts in the Sixth Circuit have consistently held that § 3585(b) prohibits awarding any credit toward a federal sentence for time already credited toward a state sentence while the prisoner was in primary, state custody. *See, e.g., Broadwater v. Sanders*, 59 F. App'x 112, 114 (6th Cir. 2003) ("Because [the inmate] received credit toward his state sentence for the time period in question, he may not receive credit for this time toward his current federal sentence."); *Garrett v. Snyder*, 41 F. App'x 756, 757 (6th Cir. 2002) (same); *Huffman v. Perez*, 230 F.3d 1358 (table), 2000 WL 1478368 at *2 (6th Cir. 2000) ("Here, it is undisputed that [Petitioner] received credit on his state sentence for this time. Consequently, he may not receive credit for this time on his federal sentence. If [Petitioner] was to be credited for this time against his federal sentence, he would receive improper double credit.") (citations omitted); *Nguyen v. Dep't of Justice*, 173 F.3d 429 (table), 1999 WL 96740, at *1 (6th Cir. 1999) ("If [he] was to be credited for this time against his federal sentence, he would be receiving improper double credit.").

18

The Fifth Circuit based *Willis* on 18 U.S.C. § 3568, the predecessor statute to 18 U.S.C. § 3585. *See Willis*, 438 F.2d at 925 n.2. There, the Court allowed a prisoner with concurrent federal and state sentences to receive credit for time spent in state custody when he was denied release on bail for the state charges. *Id*. at 925. But the reason the State denied bail was that a federal detainer was lodged against him, so the Court reasoned "that was time 'spent in custody in connection with the (federal) offense.'" *Id*.; *see Castro v. Sniezek*, 437 F. App'x 70, 72–73 (3d Cir. 2011); *see Grigsby v. Bledsoe*, 223 F. App'x 486, 488 (7th Cir. 2007) (holding that *Willis* credits apply if the federal and state sentences are concurrent).

But the Fifth Circuit specifically declined to give the petitioner credit for time when he "was actually serving his state sentence for offenses unrelated to the federal charges." *Willis*, 438 F.2d at 925; *see Castro*, 437 F. App'x at 73 (stating that even under § 3568, credit was not necessarily available for time spent in state custody on a federal sentence when that time has been credited toward the state sentence).

Petitioner here has not shown that he was denied bail on state charges because of a federal detainer or that his state and federal sentences should run concurrently (*see supra*). Petitioner therefore has not shown that this Court should award him *Willis* credit. What is more, § 3585(b) clearly prohibits double credit where Petitioner was serving a state sentence on an unrelated charge. The BOP did not err in Petitioner's sentence computation.

Because there is no error in the denial of the *nunc pro tunc* designation or sentence computation, the Court **GRANTS** Respondent's Motion for Summary Judgment, and **DENIES** the § 2241 Petition. The Court will enter Judgment for Respondent.

## APPEAL ISSUES

Federal prisoners who petition under 28 U.S.C. § 2241 challenging their federal custody

need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004); *Melton v. Hemingway*, 40 F. App'x 44, 45 (6th Cir. 2002).

Habeas petitioners seeking to appeal must pay the $505 filing fee required by 28 U.S.C. §§ 1913 and 1917. To appeal in forma pauperis in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status under Federal Rule of Appellate Procedure 24(a). *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal must first move in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides, however, that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the petitioner must move to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5).

Because Petitioner has not established that he is entitled to a *nunc pro tunc designation* or additional sentencing credit, the Court determines that any appeal would not be taken in good faith. Therefore, the Court **CERTIFIES**, under Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Further, the Court **DENIES** leave to proceed on appeal in forma pauperis.[9]

**SO ORDERED**, this 9th day of August, 2021.

                                        s/Thomas L. Parker
                                        THOMAS L. PARKER
                                        UNITED STATES DISTRICT JUDGE

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or move to proceed in forma pauperis with supporting affidavit in the United States Court of Appeals for the Sixth Circuit within 30 days.